IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | |
|---|---|
| JENNIFER L. SMITH,<br><br>                    Plaintiff,<br><br><br>     vs.<br><br><br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY, AECOM<br>TECHNOLOGY CORPORATION, and THE<br>AECOM TECHNOLOGY CORPORATION<br>DISABILITY PLAN,<br><br>                    Defendants. | ORDER AND<br><br>   MEMORANDUM DECISION<br><br><br><br><br>Case No. 2:03-CV-804 TC |

---

The parties in this ERISA[1] case have filed cross motions requesting the court to rule on

the propriety of the Defendants'[2] denial of Plaintiff's request for disability benefits[3] under the

AECOM Technology Corporation Disability Plan.[4]  For the reasons set forth below, the court

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

[2] At oral argument, the parties agreed that only Defendant Provident Life and Accident Insurance Co. ("Provident") would remain in the case and that the other Defendants would be dismissed.

[3] Additionally, the Plaintiff, Jennifer Smith, seeks attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).  The parties have agreed that the court should reserve its decision on attorney's fees and costs until after the substantive motions are resolved.

[4] Plaintiff originally asserted two causes of action in her complaint.  The first was for recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B).  The second was for recovery of statutory damages under 29 U.S.C. § 1132(c)(1) for an alleged violation of 29 U.S.C. § 1024(b)(4).  The first cause of action is the subject of the parties' motions and this Order.  The second cause of action was voluntarily withdrawn by the Plaintiff and is no longer before the

DENIES Defendants' Motion and GRANTS IN PART AND DENIES IN PART Plaintiff's

Motion.

**BACKGROUND[5]**

Plaintiff Jennifer Smith worked as a civil engineer for AECOM Technology Corporation.

As a full-time employee, she was eligible for benefits provided by the AECOM Technology

Corporation Disability Plan (an employee welfare benefit plan governed by ERISA) ("the Plan").

AECOM Technology Corporation was the Plan sponsor, and the Plan was administered through

the AECOM Technology Corporation Group Insurance Plan.

Defendant Provident insured and administered the Plan.  Provident was the claims

administrator and claims fiduciary.  Pursuant to the Plan, Provident had the "sole and exclusive

discretion and authority to carry out all actions involving claims procedures explained in the

Policy."  (Record at PLACL00012 (the Record is attached as Ex. A to Defs.' Mem. Supporting

Defs.' Mot. For J. on the Admin. Record, or, in the Alternative, Summ. J.).)  Moreover,

Provident had "the sole and exclusive discretion and power to grant and/or deny any and all

claims for benefits, and construe any and all issues relating to eligibility for benefits." (Id.)

Short-term disability ("STD") benefits and long-term disability ("LTD") benefits were available

under the Plan.  STD benefits are available for thirteen weeks (or approximately ninety days).

_____

court.  (See Pl.'s Mem. in Supp. of Mot. for Summ. J. at 13.)

[5]The facts are based on the administrative record developed during the review of
Plaintiff's claim for short term disability benefits under the AECOM Technology Corporation
Plan.  The court must limit its review to the administrative record, disregarding extrinsic
evidence presented by either party.  See Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.3d 377,
380-81 (10th Cir. 1992). Accordingly, the court will not consider the supplemental affidavit of
Ms. Smith that was not part of the administrative record.

2

In early October 2001, Ms. Smith filed a claim for short-term disability benefits under the STD portion of the Plan ("the STD Policy").  On the disability claim form, Ms. Smith described her illness as follows: "The illness began sometime over the past 2-4 mos. as a virus which has developed into a persistent infection causing exhaustion, headaches, sleep disturbance & memory fog."  (Record at PLACL00046.)  The attending physician, Dr. Dennis Remington, filled out part B of the disability claim form, indicating a diagnosis of "Persistent Infection" and listing as "subjective symptoms" "[e]xtreme fatigue, sore throat, swollen lymph nodes, dizziness – Infection."  (Id. at PLACL00044.)  Under the heading of "objective symptoms" Dr. Remington wrote "none."[6]  He further indicated that as a restriction Ms. Smith "needs rest – should stay off work."  (Id.)  In a separate letter, dated September 27, 2001, Dr. Remington wrote that "Jennifer [Smith] has a persistent infection which makes her unable to function full-time at work."  (Id. at PLACL00047.)  In another letter to Provident, dated November 6, 2001, Dr. Remington stated that "Jennifer has severe fatigue, and is being treated by me."  (Record at PLACL00049.)  Dr. Remington administered IV vitamins and hydrogen peroxide, and prescribed Paxil.

On the disability claim form, Ms. Smith listed the duties of her occupation at the time of her disability as Design Calculations (one third of her duties), Project Coordination (one third of her duties) and Technical Writing (one third of her duties).  (Id. at PLACL00046.)  Her occupation was listed as "Graduate Engineer III" (id. at PLACL00043), which was further described in a job description form given to Provident.  (See id. at PLACL00042.)  Based on this information, Provident categorized Ms. Smith's job duties as sedentary.

---

[6]It strikes the court that "swollen lymph nodes"and "infection" could be objective symptoms.

The STD Policy provides that when Provident receives "satisfactory Proof of Loss, [it] will pay short term disability (STD) weekly benefits according to the terms of the Policy." (Record at PLACL00026.)  "Proof of Loss" is defined as "written evidence satisfactory to [Provident] that [the claimant is] Disabled and entitled to STD Benefits.  Proof of Loss must be provided at [the claimant's] expense."  (Id. at PLACL00013.)  In another part of the STD Policy, it is stated that "[s]ubject to the requirements of law, the Claims Fiduciary [Provident] shall be the sole judge of the standard of proof required in any claims for benefits and/or in any question of eligibility for benefits."  (Id. at PLACL00013 (emphasis added).)

To be "Disabled" under the STD Policy, Ms. Smith was required to satisfy the following criteria:

1.     [You] are unable to perform on a full-time basis each of the Important Duties of your Own Occupation because of an Injury or Sickness that started while insured under this Policy;

2.     [You] do not work at all in any occupation; and

3.     [You] are under a Physician's Care.

(Record at PLACL00022 (emphasis added).)   "Important Duties" means "substantial and material duties normally required for the performance of your Own Occupation that cannot reasonably be altered or omitted."  (Id.)  The term "Own Occupation" means "the occupation you are routinely performing immediately prior to the Date of Disability.  We will look at your occupation as it is performed in the national economy rather than as performed for a specific employer or a specific location."  (Id.)  "Sickness" is defined as "an illness or disease, including pregnancy or complications of pregnancy, requiring treatment by a Physician."  (Id.)  And "Physician's Care" means that:

4

1.      On a regular basis, you personally visit an appropriate Physician to effectively manage and treat the disabling condition(s); and

2.      You are receiving the most appropriate treatment and care for the disabling condition.

The appropriateness of Physician, frequency of visits and care and treatment will be according to generally accepted medical standards.

(Id.)

On November 20, 2001, Provident requested a medical review of Ms. Smith's file and medical records to determine whether her alleged restrictions and limitations were supported. Dr. Jacob Martin reviewed Ms. Smith's file and indicated that there was insufficient information to support the restrictions and limitations claimed.  Upon concluding his review of the medical records from Dr. Remington's office, Dr. Martin noted: "No level of function or degree of decrease in work tolerance from fatigue.  Also job description does not make mention of impediments to sedentary work."  (Record at PLACL00063.)  Dr. Martin is board certified in occupational medicine.

On December 5, 2001, Provident denied Ms. Smith's disability claim.  The reason provided is that "there is no notation of level of function or degree of decrease in work tolerance from fatigue. . . . [T]he medical information received does not support the restrictions and limitations of your ability to do each of the material duties of your occupation."  (Id. at 63, 70.) A December 7, 2001 letter from Provident to Ms. Smith elaborated that the record before Provident showed "insufficient medical documentation to support restrictions, which prevent you from performing the duties of your occupation beyond November 5, 2001."  (Id. at PLACL00071.)

5

Ms. Smith, pursuant to her rights under the Policy, appealed the decision and submitted

an additional letter from Dr. Remington.  In July 2002, Provident requested an internal clinical

review of Ms. Smith's file, including additional medical records submitted by Dr. Remington's

office.  The reviewer stated, "I agree with the previous clinical and medical review that the main

barrier to [return to work] appears related to the self reported fatigue as well as the complaint of

lack of energy, sleep problems, and concentration/memory problems.  There doesn't appear to be

any clear clinical documentation in the records to support lack of work capacity at this time.

There is not information in the file at this time that would preclude claimant from sedentary

work."  (Record at PLACL000123.)  After this initial review, Dr. Nancy Beecher conducted an

additional medical review.  In her report, Dr. Beecher indicated that Ms. Smith "had not been

referred to a psychiatrist for evaluation or treatment of depression, "despite the fact that most of

her symptoms <u>could</u> be explained on the basis of a diagnosis of major depression." (emphasis

added).   She continued, stating that she found "no support for a physical medical condition that

would cause impairment for a sedentary physical demand job.  She is likely deconditioned at this

point, but if her depression were treated and under control, she likely would have the stamina to

work FT [full time] at a sedentary job."  (<u>Id.</u> at PLACL00127.)  "There appears to be evidence of

a significant depression here.  It is probably best to ask her if she has had any psych evaluation or

treatment since her symptoms began, and if so review those records." (<u>Id.</u> at PLACL00126.)  Dr.

Beecher is Board Certified in Family Practice and Insurance Medicine.  (<u>Id.</u> at PLACL00129.)

On August 29, 2002, Provident rejected Ms. Smith's appeal of the decision to deny her

benefits claim.  In its August 29, 2002 letter, Provident acknowledged Dr. Remington's belief

that Ms. Smith had Chronic Fatigue Syndrome, but stated that there was no diagnostic

information or objective testing indicating a lack of functional capacity.  Provident also stated

that there "appears to be evidence of significant depression.  However, the records contain no

reference of your having seen, or having been referred to, a psychiatrist for evaluation or

treatment of depression."  (Record at PLACL00128.)  The letter concluded by stating that there

was no support in the record for restrictions and limitations that would prevent Ms. Smith from

performing each of the important duties of her occupation.

In October 2002, Ms. Smith filed a request for reconsideration of the denial.  She noted

that she had been treated since April 2002 by Dr. Dianne Farley-Jones for Chronic Fatigue

Syndrome.  Dr. Farley-Jones noted in a letter that Ms. Smith remained unable to work.  Ms.

Smith also submitted test results indicating that stressors and allergies had been detected, as well

as adrenal stress.  (See Record at PLACL00165-66.)

Provident re-opened Ms. Smith's file and conducted another review.  This time,

Provident sent the information to registered nurse Latisha Hailes, who ultimately said that the

information requested was beyond her experience and deferred to a physician.  The file was then

forwarded to Dr. Beecher for a second review.  Dr. Beecher found the following:

> [Ms. Smith's] symptoms are subjective and self-reported and out of proportion to
> the underlying medical findings.  There has been no objective testing of her
> cognitive capacity or physical capacity so her doctors appear to be relying on her
> statement of what she can do and what she can't.  She is [sic] only recently begun
> to see a psychologist to deal with her psychiatric symptoms.  And all of the
> physical symptoms she complains of could be a result of somatization of
> depression and anxiety.  Records do not support a physical medical cause for her
> symptoms and without a psychiatric evaluation in the first year of the claim, it is
> impossible to determine if there was or is a psychiatric impairment.

(Record at PLACL00173.)

Provident upheld its decision to deny benefits in a December 6, 2002 letter.  The letter

reads:

> The physician opined that you had an onset of symptoms in July of 2001.  At that time, you were diagnosed as motion [sic – should be altitude] sickness and you were prescribed Zoloft.  You later complained of what appeared to be a viral illness.  You stated that you felt fatigued, weak.  Other symptoms were poor sleep, agitation, depression, excess worry, irritability/anger, difficulty concentrating, palpitations, constipation, dizziness and cold hands and feet.  Laboratory testing and cardiac evaluation could find no medical reason for your complaints.
>
> You began seeing Dr. Remington who began treating you with various nutritional supplements.  He also performed some testing at which time he stated you had some "abnormalities."  He also gave you the diagnosis of Chronic Fatigue Syndrome (CFS).  However, none of the tests he conducted can be directly related to your physical symptoms.  As of April 2002, you began seeing Dr. Farley-Jones, who is supporting your diagnosis of CFS as well as a diagnosis of irritable bowel for which you have begun taking Prilosec.
>
> Dr. Remington does mention your depression and at one point in time he prescribed Paxil.  However, there is no mention of a referral to a psychiatrist for an evaluation or therapy.  It appears that you have recently begun seeing a psychologist.
>
> Although there is mention of a chronic infection of some type, the medical documentation does not mention the typical markers for this diagnosis such as fever, elevated WBC, elevated ESR, etc.
>
> Based upon the documentation contained in your file it cannot be determined that medical records support a physical medical cause which would have prevented you from performing your occupation as of the original date for which you are claiming disability, September 6, 2001.  Also, without a psychiatric evaluation during the first year of claim, it is impossible to determine if there was or is a psychiatric impairment.

(Record at PLACL00175-76.)

Drs. Beecher and Martin are in-house medical personnel of Provident.  Provident never arranged for an independent medical examination of Ms. Smith.   The Policy does not require such a review.

Although the Plan provides long-term disability (LTD) benefits to eligible individuals,

and although Ms. Smith requests that this court award her LTD benefits for the last two years,
she did not file a claim for LTD benefits with the Plan.  The LTD benefits policy requires, among
other things, that the applicant be disabled for ninety days before the applicant becomes
potentially eligible for LTD benefits.

Ms. Smith contends that the Defendants' arbitrary and capricious decision to deny her
STD benefits effectively prevented her from filing a claim for LTD benefits.  Defendants contend
that Ms. Smith did not exhaust her administrative remedies with respect to the LTD benefits, and
so her claim must be dismissed.

## ANALYSIS

### Standard and Scope of Review

Plaintiff challenges Provident's denial of benefits under 29 U.S.C. § 1132(a)(1)(B).  "[A]
denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard
<u>unless</u> the benefit plan gives the administrator or fiduciary <u>discretionary authority</u> to determine
eligibility for benefits or to construe the terms of the plan."  <u>Firestone Tire & Rubber Co. v.
Bruch</u>, 489 U.S. 101, 115 (1989) (emphasis added).  If the administrator or fiduciary duty has
discretionary authority, then the court must review the decision under the arbitrary and capricious
standard.  <u>Sandoval v. Aetna Life & Cas. Ins. Co.</u>, 967 F.2d 377, 379-80 (10th Cir. 1992) (citing
<u>Firestone</u>, 489 U.S. at 109-111).

The parties do not dispute, and the Plan makes clear in its Section VII, that Provident has
been granted discretionary authority to determine benefit eligibility and construe the terms of the
Plan.  Specifically, the Plan provides that "the Claims Fiduciary [Provident] shall have the sole
and exclusive discretion and authority to carry out all actions involving claims procedures

9

explained in the Policy.  The Claims Fiduciary shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits."  (Plan at 17.)  Accordingly, the court will apply the arbitrary and capricious standard of review.

The standard of review, however, is modified by the fact that Provident had a conflict of interest when it made the decision to deny Ms. Smith STD benefits because it was both the insurer and the claims administrator/fiduciary at the time it made its decision to deny Ms. Smith's claim.  See Fought v. Unum Life Ins. Co. of Am., 379 F.3d 997, 999 (10th Cir. 2004) (conflict of interest existed when the claims administrator was "both payor and administrator of the plan").  When there is a conflict of interest, "the court may weigh that conflict as a factor in determining whether the plan administrator's actions were arbitrary and capricious."  Charter Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998).   "A conflict of interest triggers a less deferential standard of review."  Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 (10th Cir. 1996), as quoted in Fought, 379 F.3d at 1003-04.

In 1996, the Tenth Circuit adopted the "sliding scale" approach when applying this "less deferential standard of review."  Fought, 379 F.3d at 1004.  "Under [the sliding scale] approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict."  Chambers, 100 F.3d at 825.  In 2004, the Tenth Circuit further defined the sliding scale approach in Fought.

First, the sliding scale approach requires the court to factor into its review the fact that the decision-maker has a conflict of interest.  Fought, 379 F.3d at 1005.  If that conflict is an *inherent*

conflict of interest, the court must make "an additional reduction in deference" by placing the burden on the fiduciary to establish that the denial of benefits was not arbitrary and capricious. Id. at 1005-06.  Provident had an inherent conflict of interest.  See Fought, 379 F.3d at 1006; Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1296 n.4 (10th Cir. 2000) ("[A]s both insurer and administrator of the plan, there is an inherent conflict of interest between its discretion in paying claims and its need to stay financially sound.").  Accordingly, Provident has the burden of proving that its denial of Ms. Smith's STD benefits claim was not arbitrary and capricious.  Specifically, Provident is "required to justify its decision to exclude coverage by substantial evidence."  Fought, 379 F.3d at 1008.[7]  The court must take a "hard look" at Provident's decision.  Id.

As regards the *scope* of review, as noted above, the court must limit its review to the administrative record.  That is, the court must only consider the Plan language, and the evidence and arguments that were before Provident at the time the decision was made.  Id. at 1003, 1008 (quoting Hall v. UNUM Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002) (defining administrative record as "materials compiled by the administrator in the course of making his decision")); Sandoval, 967 F.2d at 380.

**Is Provident's Decision to Deny Ms. Smith's Claim for STD Benefits Supported by Substantial Evidence?**

Ms. Smith challenges Provident's decision under 29 U.S.C. § 1132(a)(1)(B), which

---

[7]The Tenth Circuit, in Fought, noted that the "reasonable basis" language in Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999), which establishes a very deferential standard of review, is not applicable in cases such as this where an inherent conflict of interest exists.  379 F.3d at 1008.

provides that a "civil action may be brought . . . by a participant or beneficiary [of an employee welfare benefit plan] . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Provident says it denied Ms. Smith's STD claim because "there was insufficient medical documentation to support any restrictions to Smith's return to work" and "Smith was not receiving appropriate care."  (Defs.' Mem. in Supp. at ii.)  Ms. Smith contends that Provident's decision was arbitrary and capricious for a number of reasons.

Ms. Smith contends that Provident improperly imposed extra-contractual language in the Plan by requiring objective evidence of Ms. Smith's disabling condition.  Also,  Ms. Smith contends that, contrary to Provident's position, she need only show that she cannot perform *one* of the important duties of her job rather than *all* of the important duties of her job. She bases this argument on her contention that Provident incorrectly assumed that Ms. Smith's job completely consisted of sedentary activity, when in reality the job had some physical components.   Ms. Smith also argues that Provident ignored the fact that a civil engineering job, although performed at a desk, "involve[s] cognitive analysis and require[s] a sharp, keen intellect."  (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 7.)  Finally, she contends that Provident's assessment of Ms. Smith's claim was not "full and fair" because (a) Provident did not discuss her claim with any of her physicians (other than to request medical records from their offices); (b) Provident did not have an independent physician  examine the Plaintiff; (c) the doctors who did review the files were in-house medical personnel and inherently biased; (d) the doctors who reviewed the files on behalf of Provident were not specialized in the proper areas of inquiry, including treatment of chronic fatigue syndrome, pain management, and psychiatry (e.g., Dr. Beecher, a family practice

12

physician, concluded that Ms. Smith should be seeing a psychiatrist for depression and anxiety);

(e) Provident made an adverse credibility determination of Ms. Smith without sufficient basis

(that is, it immediately suspected and disregarded all of the subjective symptoms reported by Ms.

Smith); (f) Provident required objective evidence of a disability (both the existence of the illness

and Ms. Smith's inability to work) despite the lack of such a standard in the Plan and despite the

fact that objective evidence of the ailment claimed by Ms. Smith is simply not available in

current medical circles; (g) Provident disregarded the opinions of Ms. Smith's physicians, who

presented reliable evidence of Ms. Smith's disability; and (h) the reasons given by Provident for

denial of benefits were "logically unsound" because Provident said Ms. Smith may have

depression and anxiety, which were affecting her physical and mental abilities and which could

have been treated with anti-depression and anti-anxiety medication, while stating at the same

time that Ms. Smith had the proper concentration and stamina necessary to do her job as a civil

engineer.

### Provident's Requirement of Objective Clinical Evidence

The Plan does not contain any express language requiring proof by objective clinical

evidence.  Plaintiff relies on the plain language of the Plan to argue that absent such language,

Provident is precluded from requiring such a level of proof.  The Defendants contend that the

Plan requires "satisfactory proof of continuing Disability" (see Record at PLACL00020), and so

"it was reasonable for Provident to expect objective evidence to support Smith's claim."[8]  (Defs.'

---

[8]Provident cites to two cases in support of its inclusion of an objective evidence standard.
See Maniatty v. UNUM Provident Corp., 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) ("The very
concept of proof connotes objectivity. . . ."); Williams v. UNUM Life Ins. Co. of Am., 250 F.
Supp. 2d 641, 648 (E.D. Va. 2003) ("Without an objective component to this proof requirement,

Mem. in Opp'n at 4.)  Language in the Plan says "Subject to the requirements of law, the Claims Fiduciary shall be the sole judge of the standard of proof required in any claims for benefits and/or in any question of eligibility of benefits."  (Record at PLACL00012.)  The question is whether this language is sufficient to support Provident's imposition of an objective evidence standard.  The court does not believe it is, nor is the court persuaded by the Defendants' argument that the concept of proof requires only "objective" medical evidence.  Cases have held that it is arbitrary and capricious to require objective evidence to establish a disability when the Plan does not contain express language imposing such a standard of proof.  See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 443 (3d Cir. 1997); Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 21 (1st Cir. 2002) ("Given the nature of Cook's disease [CFS], it was not reasonable for Liberty to expect her to provide convincing 'clinical objective' evidence that was she suffering from CFS.") (internal citations omitted).

In Mitchell, the plaintiff suffered from CFS.  The Plan Administrator denied plaintiff's claim pointing to the fact that there was no objective evidence in the record that plaintiff was disabled.  The appellate court held that the Administrator's decision was arbitrary and capricious, noting that "[i]t is now widely recognized in the medical and legal communities that 'there is no "dipstick" laboratory test for chronic fatigue syndrome.'"  Id. at 443 (quoting Sisco v. U.S. Dep't of Health & Human Servs., 10 F.3d 739, 744 (10th Cir. 1993)).  The court went on to explain that

[b]ecause the disease, although universally recognized as a severe disability, has

administrative review of a participant's claim for benefits would be meaningless because a plan administrator would have to accept all subjective claims of the participant without question.").

no known etiology, it would defeat the legitimate expectations of participants in the Kodak Plan to require those with CFS to make a showing of clinical evidence of such etiology as a condition of eligibilty for LTD benefits. Thus, it was arbitrary and capricious for the Administrator to deny Mitchell benefits because of a lack of such clinical evidence of the etiology of his CFS.

Id. (internal citation omitted).

Based on the above, the court concludes that Provident has not met its burden of proving that its denial of Ms. Smith's STD benefits claim was not arbitrary and capricious.

### Provident's Requirement That Plaintiff Be Unable to Perform Each of the Important Duties of Her Job

Ms. Smith listed the duties of her occupation at the time of her disability as Design Calculations (one third of her duties), Project Coordination (one third of her duties) and Technical Writing (one third of her duties).   The court agrees that in order to sustain her burden of proving that Ms. Smith meets the definition of "disabled" as outlined in the STD policy, she need only prove that she cannot perform one of the important duties of her job.  See Lain v. UNUM Life. Ins. Co. of Am., 279 F.3d 337, 344-45 (5th Cir. 2002) (holding that "each" means that when an insured is unable to perform a single material duty, the person is entitled to benefits); McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129, 1133-34 (9th Cir. 1996) (ruling that "[a] common sense interpretation of the ambiguous provision [requiring an insured to be disabled from performing "every duty" of his "occupation"] is that continuous and total disability exists if an employee is unable to perform one of the essential duties of his or her position."); Torix v. Ball Corp., 862 F.2d 1428, 1431 (10th Cir. 1988) ("We believe that the policy concerns which underlie ERISA would be severely undermined if we endorsed a literal reading of the plan's terms.  Thus we . . . hold that a reasonable interpretation of a claimant's entitlement to payments

based on a claim of 'total disability' must consider the claimant's ability to pursue gainful employment in light of all the circumstances."); <u>Lasser v. Reliance Std. Life Ins. Co.</u>, 146 F. Supp. 2d 619, 636 (D.N.J. 2001) (holding that under "own occupation" standard, disability means inability to perform material duties of one's regular occupation, and "[a] duty is 'material' when it is sufficiently significant in either qualitative or quantitative sense that an inability to perform it means that one is no longer practicing the 'regular occupation'").

In Ms. Smith's case, her job required keen cognitive ability and analytical skills that, as noted by her and her treating physicians, were impaired by Ms. Smith's ailments, whether physical or psychological. That was sufficient to show that she was unable to perform at least one, if not all, of her important duties. In addition, Provident assumed that her job was "sedentary." But in her description of her job duties, Ms. Smith described her job duties as including "Project Coordination." It strikes the court that this term is sufficiently broad that it was unreasonable for the Administrator to automatically conclude that Ms. Smith's job was sedentary.

### Whether Provident's Review was Full and Fair

The court finds that Defendants have not satisfied their burden of proof that their review of Ms. Smith's claim was full and fair. In particular, the court finds that Provident's reliance on in-house medical personnel, including a registered nurse who admittedly was not equipped to conduct the medical review assigned to her, was arbitrary and capricious, particularly given the area of practice of those physicians (family and occupational medicine). Provident also improperly stated in the same breath that Ms. Smith could do her job while acknowledging that Ms. Smith had problems that needed to be addressed by a psychiatrist in order to make her well.

16

As Plaintiff notes, this is illogical reasoning.

Based on all of the above, the court finds that Provident has not met its burden of showing that its decision to deny STD benefits is supported by substantial evidence.

### Ms. Smith's Claim for Long Term Disability Benefits

The court agrees with the Defendants that Ms. Smith's request for long term disability ("LTD") benefits cannot be sustained.  Nothing in the record addresses whether Ms. Smith is eligible for LTD benefits.  The issue is not properly before the court because Ms. Smith did not exhaust her administrative remedies.  Accordingly, that claim is dismissed without prejudice.

### ORDER

For the foregoing reasons, the court ORDERS as follows:

1.     Defendants' Motion for Judgment on the Administrative Record or, in the Alternative, Summary Judgment, is DENIED.

2.     Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  Specifically:

a.     The court makes its determination based on the administrative record, rather than under the summary judgment standard;

b.     The decision to deny Ms. Smith's claim for short-term disability benefits was arbitrary and capricious and Provident is ordered to pay Ms. Smith the benefits owed under the STD Policy;

c.     Ms. Smith's claim for LTD benefits is dismissed without prejudice.

d.     Ms. Smith's claims against Defendants AECOM Technology Corporation and AECOM Technology Corporation Disability Plan are dismissed.

17

3.       If Ms. Smith wishes to renew her claim for attorney's fees and costs, she must file

such a motion within twenty-one days of the date of this Order.

DATED this 21st day of September, 2005.

BY THE COURT:

TENA CAMPBELL
United States District Judge

18